IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MILITARY ORDER OF THE PURPLE         :
HEART SERVICE FOUNDATION, INC.,
                                     :
     Plaintiff/Counter Defendant,
                                     :
v.
                                     :
OTHERS FIRST, INC.,
                                     :  Civil Action No. GLR-12-1483
     Defendant/Counter Claimant,
                                     :
and
                                     :
CHARITY FUNDING, INC.,
                                     :
     Defendant.
                                     :

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Plaintiff/Counter Defendant Military Order of the Purple Heart Service Foundation, Inc.'s ("Service Foundation") Motion to Dismiss Defendant/Counter Claimant Others First, Inc.'s ("Others First") Counterclaim Counts IV through VI. (ECF No. 28). The issues have been fully briefed and the Motion is ripe for disposition. No hearing is necessary. See Local Rule 105.6 (D.Md. 2011). For the reasons that follow, the Motion to Dismiss will be granted. Counterclaim Counts IV and V will be dismissed without prejudice. Counterclaim Count VI will be voluntarily dismissed.

## I.     BACKGROUND[1]

Military Order of the Purple Heart of the United States of America, Inc. ("Military Order") is a federally chartered membership organization of Purple Heart medal recipients.  See 36 U.S.C. §§ 140501, 140503 (2012).  The Service Foundation is the exclusive fundraiser for the Military Order, and owner of United States Trademark Registration No. 4,015,788 for the Purple Heart mark.  The Service Foundation uses the mark in its various charitable fundraising activities, including the Purple Heart Car Donation Program.

Others First, a 501(c)(3) non-profit charitable organization, also operates a car donation program for military veterans named Cars Helping Veterans.  This program raises funds for the benefit of all veterans, including recipients of the Purple Heart medal.  To facilitate this campaign, Others First's website indicates that the car donations benefit "Purple Heart Veterans," and utilizes depictions of the Purple Heart medal.

Prior to this action, the Service Foundation instructed Others First to cease and desist its use of the Purple Heart mark.  On May 16, 2012, the Service Foundation commenced the pending action against Others First.[2]  On August 27, 2012, the Service

---

[1] Unless otherwise noted, the facts are taken from the Service Foundation's First Amended Complaint (ECF No. 14), and Others First's Answer and Counterclaim to Plaintiff's First Amended Complaint (ECF No. 22).

2

Foundation filed an Amended Complaint, which adds Charity Funding as a Defendant and alleges, *inter alia*, trademark infringement. On September 20, 2012, Others First filed an Answer and six-count Counterclaim seeking cancellation of United States Trademark Registration No. 4,015,788 on various bases.

On October 11, 2012, the Service Foundation moved, under Federal Rule of Civil Procedure 12(b)(6), to dismiss Counterclaim Counts IV through VI.[3]  Others First filed a Response on October 25, 2012, and the Service Foundation filed a Reply on November 8, 2012.  (See ECF Nos. 33-34).

## II. DISCUSSION

**A.  Standard of Review**

To survive a Federal Rule of Civil Procedure 12(b)(6) motion, the complaint must allege facts that, when accepted as true, "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted).  A claim is plausible on its face when "the plaintiff

---

[2] The Service Foundation also filed a complaint with Google to enforce its trademark of the Purple Heart term.  As a result, Google removed Cars Helping Veterans from its keyword advertising and metatags, and banned Others First from using the term and depiction of the medal.

[3] Counterclaim Count VI sought cancellation of the Service Foundation's pending trademark application, filed on June 11, 2012 (Serial No. 85,648,473).  Others First voluntarily dismissed this Count, however, due to a preliminary denial of the application on September 27, 2012.  (See Def. – Countercl. Pl.'s ["Def."] Opp'n to Mot. to Dismiss at 1 n. 1, ECF No. 33).

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). Legal conclusions or conclusory statements do not suffice and are not entitled to the assumption of truth. Id. (citing Twombly, 550 U.S. at 555). Thus, the Court "must determine whether it is plausible that the factual allegations in the complaint are enough to raise a right to relief above the speculative level." Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009) (quoting Andrew v. Clark, 561 F.3d 261, 266 (4th Cir. 2009)) (internal quotation marks omitted).

In determining whether to dismiss, the Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005); Albright v. Oliver, 510 U.S. 266, 268 (1994).

Moreover, Others First's allegation of fraud is subject to a heightened pleading standard under Federal Rule of Civil Procedure 9(b), which requires the circumstances constituting fraud to be pled "with particularity." Specifically, Rule 9(b) requires factual allegations that demonstrate "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained

thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (internal quotation marks and citation omitted). Although Rule 9(b) permits knowledge and intent to be alleged generally, the pleadings must include "sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." Exergen Corp. v. Wal-Mart Stores, Inc., 575 F.3d 1312, 1327 (Fed. Cir. 2009).

**B.   Analysis**

The Counterclaim Counts subject to the pending Motion seek the cancellation of the Service Foundation's United States Trademark Registration No. 4,015,788 on the bases of fraudulent procurement (Count IV) and violation of the Sherman Act § 2 (Count V). Both Counts will be dismissed without prejudice.

**1.   Fraudulent Procurement (Count IV)**

In Count IV, Others First alleges that the Service Foundation committed fraud before the United States Patent and Trademark Office ("PTO") when it applied to register the Purple Heart mark. Specifically, Others First alleges that the Service Foundation made a fraudulent misrepresentation in its registration application by declaring that no other person or entity had a right to use the mark. "[A] trademark is obtained fraudulently . . . only if the applicant or registrant knowingly makes a false, material representation with the intent to deceive the PTO." In re Bose Corp., 580 F.3d 1240, 1245 (Fed. Cir. 2009).

To survive a motion to dismiss of this Count, Others First must establish that:

> (1) there was in fact another use of the same or a confusingly similar mark at the time the oath was signed; (2) the other user had legal rights superior to [the Service Foundation's]; (3) [the Service Foundation] knew that the other user had [superior rights in the mark]; and that (4) [the Service Foundation], in failing to disclose these facts to the [PTO], intended to procure a registration to which it was not entitled.

Intellimedia Sports, Inc. v. Intellimedia Corp., 43 U.S.P.Q.2d 1203, 1206 (T.T.A.B. 1997).

The Service Foundation avers that Others First failed to meet the Rule 9(b) pleading standard because Others First failed to allege sufficient underlying facts to support a reasonable inference that the Service Foundation acted with the requisite state of mind. (Pl. – Counter Def.'s ["Pl."] Mot. to Dismiss at 4, ECF No. 29). Namely, the Service Foundation avers that Others First failed to show facts sufficient to support the Service Foundation's knowledge of the statement's falsity, intent to deceive the PTO, belief that it had deceived the PTO, or disbelief in the statement made in the declaration. (Id.) Others First counters that this Count was pled with sufficient particularity.

The Court finds that Other First's allegations of fraudulent procurement fail to meet the Rule 9(b) particularity standard. As a preliminary matter, Others First does not allege anything related to superior rights, as required by element two above. Moreover, each of the allegations related to knowledge and intent

are conclusory, merely stating that, at the time of the application, the Service Foundation had a "willful intent to deceive" the PTO, and that the declaration was "knowingly false" because the Service Foundation "had knowledge that other third parties and charitable organizations currently use and have used the term 'Purple Heart' in connection with charitable fundraising[.]" (Def.'s Countercl. ¶¶ 51-52).

Although Rule 9(b) permits knowledge and intent to be alleged generally, Others First is still required to assert underlying facts that permit the Court to infer the requisite state of mind. Exergen Corp., 575 F.3d at 1327. As previously stated, there are no factual allegations in this Count that the Service Foundation believed a third party had superior rights in the mark or that it had no reasonable basis to believe that no other person or entity had a right to use the mark. See Intellimedia Sports, Inc., 43 U.S.P.Q.2d at 1206. Others First also fails to allege any facts that would illustrate how the Service Foundation allegedly acquired this knowledge of third party mark usage.

As a result, the Service Foundation's Motion to Dismiss Counterclaim Count IV is granted. This Count is dismissed without prejudice.

**2.    Violation of the Sherman Act § 2 (Count V)**

In Count V, Others First alleges that the Service Foundation's "misuse of the trademark[], acts of unfair competition, and anticompetitive behavior" constitute a violation of the Sherman Act § 2. (Def.'s Countercl. ¶ 57).

Section 2 prohibits monopolization and attempts to monopolize the relevant market. 15 U.S.C. § 2 (2012). To state a monopolization claim, a plaintiff must show "(1) possession of monopoly power in the relevant market, and (2) willful maintenance of that power." E.I. du Pont de Nemours & Co. v. Kolon Indust., Inc., 637 F.3d 435, 450 (4th Cir. 2011) (citation omitted). Moreover, to state a claim for attempted monopolization, a plaintiff must demonstrate: "(1) the use of anticompetitive conduct; (2) with specific intent to monopolize; and (3) a dangerous probability of success." Id. at 441; see also Spectrum Sports, Inc. v. McQuillan, 506 U.S. 447, 456 (1993).

The Service Foundation argues that Others First fails to state a monopolization claim in Count V because it failed (1) to define a relevant product market, and (2) to establish that the Service Foundation has monopoly power. The Court will address each of these arguments in turn.

**a.    Relevant Product Market**

As a threshold matter, in alleging monopolization or attempted monopolization under Section 2, Others First must define

8

the relevant market. Kolon Indust., 637 F.3d at 441. To complete this definition, it must establish the relevant product and geographic market subject to monopolization. Id. (citing Consul, Ltd. v. Transco Energy Co., 805 F.2d 490, 493 (4th Cir. 1986); RCM Supply Co. v. Hunter Douglas, Inc., 686 F.2d 1074, 1076 (4th Cir. 1982)). The parties disagree on whether Others First properly alleged a relevant product market.

A relevant product market is defined as "the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it." Brown Shoe Co. v. United States, 370 U.S. 294, 325 (1962); see also United States v. E.I. du Pont de Nemours & Co. ("du Pont"), 351 U.S. 377, 394-95 (1956). In other words, "the question is whether two products can be used for the same purpose, and, if so, whether and to what extent purchasers are willing to substitute one for the other." Smith & Johnson, Inc. v. Hedaya Home Fashions, Inc., No. 96 Civ. 5821 MBM, 1996 WL 737194, at *5 (S.D.N.Y. Dec. 26, 1996). Although courts "hesitate to grant motions to dismiss for failure to plead a relevant product market[,]" there is "no absolute rule against the dismissal" of such claims on that basis. Kolon Indust., 637 F.3d at 443 (quoting Todd v. Exxon Corp., 275 F.3d 191, 199-200 (2d Cir. 2001)) (citations omitted).

In its Opposition, Others First avers that the alleged relevant product market is "charitable fundraising for wounded

9

veterans, including recipients of the Purple Heart medal." (Def.'s Opp'n to Mot. to Dismiss ["Def.'s Opp'n"] at 7 n.4). In response, the Service Foundation correctly notes that a trademark does not define its own relevant product market. See du Pont, 351 U.S. at 393; see also Generac Corp. v. Caterpillar, Inc., 172 F.3d 971, 977 (7th Cir. 1999) ("Product markets are not defined in terms of one trademark or another; trademarks simply identify the origin of a product. Not even the most zealous antitrust hawk has ever argued that Amoco gasoline, Mobil gasoline, and Shell gasoline are three separate markets[.]"); Sheridan v. Marathon Petroleum Co., 530 F.3d 590, 595 (7th Cir. 2008) ("Marathon does of course have a 'monopoly' of Marathon franchises. But 'Marathon' is not a market; it is a trademark; and a trademark does not confer a monopoly; all it does is prevent a competitor from attaching the same name to his product."); Queen City Pizza, Inc. v. Domino's Pizza, Inc., 124 F.3d 430, 438 (3d Cir. 1997) ("Here, the dough, tomato sauce, and paper cups that meet Domino's Pizza, Inc. standards and are used by Domino's stores are interchangeable with dough, sauce and cups available from other suppliers and used by other pizza companies.").

In limited circumstances, however, a single brand may constitute a separate market when reasonable substitutes are unavailable. See Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 481-82 (1992). This circumstance is not pled

...

in the pending case. To the contrary, Others First fails to allege the absence or presence of reasonably interchangeable products, or other facts that would indicate why the market should be limited in the manner alleged in the Counterclaim.

Although Others First attempts to remedy this deficiency by arguing that consumers making charitable donations "wish to contribute directly to veterans who have been awarded medals, such as the Purple Heart, for exceptional military service" (see Def.'s Opp'n at 7 n.4), the argument merely identifies a consumer preference, not the absence of reasonable alternatives. See, e.g., Global Discount Travel Servs., LLC v. Trans World Airlines, Inc., 960 F.Supp. 701, 704-06 (S.D.N.Y. 1997) ("The plaintiff's argument is analogous to a contention that a consumer is 'locked into' Pepsi because she prefers the taste, or NBC because she prefers 'Friends,' 'Seinfeld,' and 'E.R.'"). Moreover, this argument supports a market definition that does not necessarily require the use of the Purple Heart term because the Purple Heart medal may be reasonably interchangeable with other medals that are awarded for exceptional military service. In fact, this argument presents the Purple Heart medal as one of several options.

In sum, Others First fails to allege facts that, if proven, would show that "charitable fundraising for wounded veterans, including recipients of the Purple Heart medal" is, indeed, the relevant product market. For this reason, Count V must fail.

See, e.g., Kolon Indust., 637 F.3d at 443 (quoting Todd, 275 F.3d at 200) ("Cases on which dismissal on the pleadings is appropriate frequently involve . . . [a] failure even to attempt a plausible explanation as to why a market should be limited in a particular way."); Smith & Johnson, Inc., 1996 WL 737194, at *6 ("A plaintiff's failure to define its market by reference to the rule of reasonable interchangeability is, standing alone, valid grounds for dismissal.").

### b. Monopoly Power

Others First's failure to properly allege a relevant product market alone precludes the progression of this Count. The Court finds, however, that Others First also fails to show that the Service Foundation achieved, or had a dangerous probability of achieving, monopoly power.

Monopoly power occurs when "a product is controlled by one interest, without substitutes available in the market." du Pont, 351 U.S. at 394. "[P]ossession of monopoly power in the relevant market" is the first element of a monopolization claim. Kolon Indust., 637 F.3d at 450. Similarly, an attempted monopolization claim requires a showing of a dangerous probability that the Service Foundation would gain monopoly power in the relevant market. Kolon Indust., 637 F.3d at 441; see also Spectrum Sports, Inc., 506 U.S. at 456.

Others First alleges that the Service Foundation: (1) demanded that Others First cease use of the Purple Heart term and medal depiction after registering the mark (Def.'s Countercl. ¶ 28), (2) filed complaints with this Court and Google regarding Others First's use of the mark (id. ¶¶ 32-33), and (3) deliberately misrepresented the validity and scope of its "asserted fraudulently procured Registration against other entities[.]" (id. ¶ 57). Moreover, Others First alleges that, if the trademark registration is permitted to stand, several charitable organizations will be inhibited from raising funds on behalf of Purple Heart recipients and other wounded veterans. (Id. ¶¶ 36-38, 57).

These allegations, however, fail to show monopolization, or attempted monopolization, because they merely recapitulate the Service Foundation's enforcement of its current trademark. See, e.g., du Pont, 351 U.S. at 393 (stating, in dicta, the "power that . . . automobile or soft-drink manufacturers have over their trademarked products is not the power that makes an illegal monopoly."); Nat'l Bd. for Certification in Occupational Therapy, Inc. v. Am. Occupational Therapy Ass'n, 24 F.Supp.2d 494, 508 (D.Md. 1998) ("Enforcement of [the] registered trademark . . . does not amount to evidence of . . . willful acquisition of monopoly power."); Car-Freshner Corp. v. Auto Aid Mfg. Corp., 438 F.Supp. 82, 88 (N.D.N.Y. 1977) ("The Court merely holds that the

13

plaintiffs' efforts to register and protect the trademark in issue did not constitute an unlawful attempt to monopolize in violation of 15 U.S.C. § 2."). Therefore, the alleged trademark enforcement, absent more, does not illustrate that the Service Foundation achieved, or had a dangerous probability of achieving, monopoly power.

As a result, the Service Foundation's Motion to Dismiss Count V is granted. This Count is dismissed without prejudice.

### III. CONCLUSION

For the reasons stated above, the Motion to Dismiss is GRANTED. (ECF No. 28). Counterclaim Counts IV and V are hereby DISMISSED without prejudice. Counterclaim Count VI is hereby VOLUNTARILY DISMISSED. A separate Order follows.

Entered this 28th day of December, 2012

/s/
_____
George L. Russell, III
United States District Judge